NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| YUJIE WANG and PENG XIE, | : |
| : | Case No. 3:18-cv-11933-BRM-TJB |
| Plaintiffs, : | |
| v. : | |
| : | **OPINION** |
| NEW JERSEY STATE POLICE, : | |
| JOSEPH FUENTES, TROOPER : | |
| BRIAN QUIRK, TROOPER : | |
| J CZECH, JOHN DOES 1-10, : | |
| and ABC PUBLIC : | |
| ENTITY/AGENCY 1-10, : | |
| : | |
| Defendants. : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants New Jersey State Police ("NJSP"), Brian Quirk ("Quirk"), J Czech ("Czech"), and Joseph Fuentes' ("Fuentes") (collectively, "Defendants") Motion to Dismiss the Second Amended Complaint. (ECF No. 15). Plaintiffs Yujie Wang ("Wang") and Peng Xie ("Xie") (collectively, "Plaintiffs") oppose the Motion. (ECF No. 21.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Defendants' Motion is **GRANTED in part and DENIED in part**.

**I.     BACKGROUND**

   **A.     Factual Background**

For the purposes of the Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

On July 21, 2016, Wang received a phone call from her husband, Xie, stating two New Jersey State Troopers, Quirk and Czech, were at their home looking for her. (ECF No. 6 ¶ 26.) While Xie was on the phone with Wang, Quirk took his phone to ask Wang if she knew "Lee." (*Id.* ¶ 27.) Wang did not. (*Id.*) Quirk also informed Wang she was being charged with prostitution and ordered her to report to NJSP barracks in Cranbury. (*Id.* ¶ 28.) Wang immediately left New York City, returned home, and reported to the Cranbury barracks with her husband. (*Id.* ¶¶ 28-30.)

After her arrival, Quirk repeated that Wang was being charged with prostitution and other sex related charges. (*Id.* ¶ 31.) Wang informed the officers "it was a mistake, that she was not involved in prostitution, that she was not the person they were looking for, and that she could provide proof of her innocence." (*Id.* ¶ 33.) Two other women arrested in connection with the same matter were also at the NJSP barracks and admitted they did not know Wang. (*Id.* ¶ 34.) Nevertheless, Wang was arrested, handcuffed, and transported to Middlesex County jail, where she was fingerprinted, booked and underwent a strip search. (*Id.* ¶¶ 35-36.) Bail was set at $25,000 and issued the night of her arrest, however, Wang spend six days and five nights in county jail before her family could post her bail. (*Id.* ¶¶ 37, 46.)

Wang was subsequently arraigned and charged with second degree conspiracy to commit

racketeering, N.J.S.A. § 2C:41-2(d); third degree promoting prostitution, N.J.S.A. §§ 2C:34-1(b); third degree conspiracy to promote prostitution, N.J.S.A. §§ 2C: 34-1 and 2C:5-2(a); and fourth degree conspiracy to promote prostitution and operate a sexually oriented business within 1,000 feet of a school, N.J.S.A. §§ 2C:34-7 and 2C:5-2(a). (*Id.* ¶ 44.) A few months after her arrests, Wang and her defense attorney provided Defendants with exculpatory evidence concerning her whereabouts on February 27, 2016. (*Id.* ¶¶ 56-57.) Yet, Quirk and Czech falsely claimed to have videos and photographs of Wang "soliciting an undercover [t]rooper to engage in sex acts for $100.00." (*Id.* ¶ 59.) Quirk and Czech also falsely claimed other officers had seen Wang at the Grand Health Spa. (*Id.* ¶ 61.) It was "well over a year" before Defendants "finally admit[ed] in court [that] they had no video, no photographs, and no evidence against [Wang]." (*Id.* ¶ 69.)

As a result of Defendants' lack of evidence, Wang filed a motion for a probable cause hearing, and a hearing was set for August 11, 2017. (*Id.* ¶ 71.) During that proceeding, the DAG assigned to the case admitted Quirk and Czech "failed to provide him with a single piece of evidence or discovery linking [] Wang to the crimes for which she was charged." (*Id.* ¶ 72.) The probable cause hearing was adjourned to September 5, 2017, wherein the judge dismissed all charges against Wang due to a lack of evidence. (*Id.* ¶ 74.) "The sole reason [Quirk and Czech] arrested [] Wang was because she was the registered owner of a car that was parked in the public parking lot of the premises where the alleged criminal activities took place." (*Id.* ¶ 76.)

As a result of the forgoing events, Wang was "publicly and privately humiliated, embarrassed, and depressed." (*Id.* ¶ 84.) She was also restricted from traveling for more than one year and was unable to attend her grandmother's funeral, lost potential business investments in China because her passport was seized, and was forced to cancel her anniversary plans, which had been paid for. (*Id.* ¶¶ 85-88.)

3

Premised on the above factual allegations, Plaintiffs filed this action on July 22, 2018. (ECF No. 1.) On August 7, 2018, they filed a Second Amended Complaint alleging: (1) 42 U.S.C. § 1983 false arrest/imprisonment; (2) 42 U.S.C. § 1983 malicious prosecution; (3) 42 U.S.C. § 1985 conspiracy; (4) 42 U.S.C. § 1983 supervisor liability; (5) negligent hiring, training, retention, and supervision; (6) 42 U.S.C. §§ 1981, 1983 racial discrimination; (7) 42 U.S.C. § 1985(3) conspiracy with racial animus; (8) violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-2; (9) violation of the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-1 to 2; (10) negligent and intentional infliction of emotional distress; (11) per quod as to Xie; and (12) punitive damages. (ECF No. 6.) On December 28, 2018, Defendants filed a Motion to Dismiss the Second Amended Complaint. (ECF No. 15.) Plaintiffs oppose this Motion. (ECF No. 21.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

## III. DECISION

In their moving brief, Defendants argue this Court should dismiss: (1) all claims against NJSP and Quirk and Czech in their official capacities, as they are immune from suit pursuant to the Eleventh Amendment; (2) all claims against NJSP and Quirk and Czech in their official capacities, since they are not "persons" within § 1983; (3) the § 1983 and NJCRA claims against Fuentes for failure to state a claim; (4) the § 1983 malicious prosecution claim for failure to state a claim; (5) the §§ 1981 and 1983 racial discrimination claim for failure to state a claim; (6) the negligent hiring, training, retention, and supervision for also failing to state a claim; (7) the negligent infliction of emotional distress claim; (8) the intentional infliction of emotional distress claim; and (9) the NJLAD claim as inapplicable to this matter. (*See* ECF No. 15-2.)

Plaintiffs concede certain arguments "can be immediately disposed of." (ECF No. 21 at 20.) Specifically, they "concede the Eleventh Amendment bars all claims brought pursuant to 42 U.S.C. § 1983, § 1981, § 1985 and the New Jersey Civil Rights Act, against the NJSP and against Defendants Quirk and Czech, in their official capacity, only." (*Id.*) Plaintiffs also concede Count VI, racial discrimination, and Count VIII, NJLAD[1], should be dismissed. (*Id.* at 21.) Accordingly, all claims against NJSP and Quirk and Czech in their official capacity are **DISMISSED**. Count VI and Count VIII are also **DISMISSED**.

The Court will only address the remaining claims at issue, whether Plaintiffs sufficiently pled: (1) § 1983 and NJCRA claims against Fuentes; (2) malicious prosecution against Quirk and Czech; (3) negligent hiring, training, retention or supervision against NJSP and Fuentes; (4) and negligent and intentional infliction of emotional distress against Quirk and Czech.

---

[1] In their brief, Plaintiffs inadvertently stated the NJLAD claim is Count IX instead of VIII.

### A. Claims Against Fuentes

The Second Amended Complaint alleges six causes of actions against Fuentes: (1) 42 U.S.C. § 1985 conspiracy; (2) 42 U.S.C. § 1983 supervisor liability; (3) negligent hiring, training, retention, and supervision; (4) 42 U.S.C. § 1985(3) conspiracy with racial animus; (5) violation of the NJCRA; and (6) negligent and intentional infliction of emotional distress. (*See* ECF No. 6.) Defendants argue the Court should dismiss all counts against him because "Fuentes is not mentioned a single time in the second of the Second Amended Complaint entitled 'Factual Allegations.'" (ECF No. 15-2 at 17.) Plaintiffs contend they have plead sufficient facts to establish all causes of action against Fuentes. (See ECF No. 21 at 21, 26, 28.)

The Court agrees with Defendants. Fuentes is not mentioned once in the crucial portion of the Second Amended Complaint, the Factual Allegations, which is thirteen pages long and consists of eighty-nine paragraphs. He is only mentioned in the above six Counts in a conclusory and formulaic manor, which Plaintiffs couch as factual allegations. For example, Count IV, 42 U.S.C. § 1983 Supervisor Liability, alleges:

> 133. Plaintiff, **YUJUE WANG,** repeats and realleges the foregoing paragraphs of the Complaint as if the same were fully set forth at length herein.
>
> 134. Defendants **JOSE FUENTES**, as Superintendent of the NJSP, is liable for creating, implementing and enforcing policies, practices and customs of the **NJSP**.
>
> 135. Defendants **FUENTES** and **JOHN DOES 1-10**, were, at all relevant times, supervisory personnel for the **NJSP**, with oversight responsibility for Defendants **QUIRK, CZECH,** and **JOHN DOES 1-10.** They were responsible for the hiring and firing, instruction, supervision, correction, discipline, and training of all officers, including the named Defendants, on all aspects of law enforcement procedures, including the use of force, arrest procedures, pursuit, conducting traffic stops, proper investigative techniques, and

evaluation of what constitute a proper determination of probable cause.

136. Defendants **FUENTES** and **JOHN DOES 1-10**, a supervisory personnel in the **NJSP**, owed a duty of care to **MS. WANG** to prevent the conduct alleged, which foreseeably caused her injuries and violation of her civil rights.

137. Defendant **FUENTES**, as Superintendent of the **NJSP** had a duty to properly supervise officers, including Defendant Officers but failed to do so.

138. Based on prior conduct and complaints against Defendants **QUIRK, CZECH,** and **JOHN DOES 1-10,** Defendants knew, or in the exercise of due diligence should have known that if they failed to properly supervise and discipline Defendants, the inappropriate, unlawful and tortuous conduct of Defendants against **MS. WANG** was likely to occur.

139. Defendants **FUENTES** and **JOHN DOES 1-10**'s failure to take preventive and remedial measures, including a failure to supervise and discipline **NJSP** Officers, including the named Defendants, resulted in the malicious prosecution of **MS. WANG**. Had Defendants taken the appropriate action, **MS. WANG** would not have been illegally detained, seized, searched, arrested, unlawfully imprisoned, and maliciously prosecuted.

140. Defendants' failure to supervise and discipline Defendants **QUIRK, CZECH,** and **JOHN DOES 1-10**, amounted to negligence, gross negligence, deliberate indifference, or reckless misconduct which directly caused and was the moving force behind the constitutional deprivations **MS WANG** suffered.

141. As a direct and proximate result of Defendants' conduct and abuse of authority detailed above, Plaintiff, **YUJUE WANG,** sustained the damages hereinbefore alleged.

(ECF No. 6 ¶¶ 133-41.) The most liberal reading of this Count, as well as all others asserted against Fuentes, fails to articulate any facts that would support a claim against Fuentes. While Plaintiffs Second Amended Complaint "does not need detailed factual allegations," it "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."
*Twombly*, 550 U.S. at 555. Accordingly, all claims against Fuentes are **DISMISSED**.

B.  **Section 1983 Malicious Prosecution Against Quirk and Czech**

Defendants argue Plaintiffs' "Second Amended Complaint does not set forth a plausible claim that [D]efendants Quirk and Czech initiated Wang's arrest with malice." (ECF No. 15-2 at 19.) Plaintiffs contend malice can be inferred from lack of probable cause. (ECF No. 21 at 24.)

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must establish that (1) the conduct deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States and (2) the conduct challenged was committed by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).

To state a claim for malicious prosecution under § 1983 and determine whether the alleged conduct deprived plaintiff of his Fourth Amendment rights, a plaintiff must plead:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d

497, 521 (3d Cir. 2003)). Malice is defined as "the intentional doing of a wrongful act without just cause or excuse." *Biaggi-Pacheco v. City of Plainfield*, No. 16-3511, 2017 WL 4618751, at *6 (D.N.J. Oct. 13, 2017) (quoting *Brunson v. Affinity Fed. Credit Union*, 972 A.2d 1112, 1120 (N.J. 2009)). "Malice is an independent element, requiring something above and beyond mere lack of probable cause, although the absence of probable cause is highly probative." *Id.* Therefore, a malicious prosecution allegation must "contain extrinsic evidence of malice." *Id.*

Furthermore, the analysis for Plaintiffs' New Jersey Constitutional malicious prosecution claim is the same as the § 1983 analysis. *See Estate of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x 239, 245 n.4 (3d Cir. 2016) (holding that "it appears undisputed that [p]laintiffs' claims under the New Jersey Constitution and the New Jersey Civil Rights Act trigger the same legal elements and principles as . . . [the] federal causes of action [under Section 1983]"); *Lucia v. Carroll*, No. 12-3787, 2014 WL 1767527, at *5 (D.N.J. May 2, 2014) (finding that the analysis for plaintiff's article 1, paragraph 7 of the New Jersey Constitution malicious prosecution claim was the same as its § 1983 claims). Accordingly, the Court applies the same standard to all of Plaintiffs' malicious prosecution claims.

Defendants do not assert that the Second Amended Complaint should be dismissed as to the first, second, third, or fifth elements. Instead, they contend the Second Amended Complaint fails to plead Defendants' acted maliciously. The Court finds Plaintiffs' Second Amended Complaint has plead numerous allegations of malice. For example, the Complaint alleges Defendants lacked probable cause to arrest Wang; that Defendants "deliberately took steps to ensure [Wang's] bail could not be posted, including but not limited to failing to contact the DAG to approve her bail, in an attempt to coerce her cooperation and confession to crimes she did not commit;" "Defendant Officers ignored the exculpatory evidence and falsely claimed to have a

10

video and photographs of [Wang] soliciting an undercover Trooper to engage in sex acts for $100.00," when no such video existed; etc. (*See* ECF No. 21-1.) Essentially, Wang has pled that her arrest, seizure, imprisonment, indictment and prosecution would not have occurred absent Quirk and Czech's continuous unlawful and fraudulent actions, which they undertook without any information or evidence other than seeing Wang's car parked in a public parking lot in proximity to the Grand Health Spa. Accordingly, Defendants' Motion to Dismiss Count II, § 1983 malicious prosecution, is **DENIED**.

      **C.**      **Negligent Hiring, Training, Retention or Supervision Against NJSP and Fuentes**

Defendants argue Plaintiffs have failed to plead facts sufficient to support a finding of negligent hiring, training, retention or supervision against NJSP and Fuentes. (ECF No. 15-2 at 23.) Plaintiffs contend "the facts alleged in the Second Amended Complaint establish a plausible claim at this point that it was the policies or customs implemented by Fuentes that directly caused their harm." (ECF No. 21 at 27.)

It appears Plaintiffs agree that NJSP is immune from suit pursuant to the Eleventh Amendment because they do not mention NJSP in their opposition brief on this issue. However, to the extent they argue they have sufficiently pled a claim against NJSP for negligent hiring, training, retention, or supervision, the Court finds NJSP is immune from suit pursuant to the Eleventh Amendment.[2] "That a State may not be sued without its consent is a fundamental rule of jurisprudence." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) (quoting *In*

---

[2] The Court addresses this argument because even though Plaintiffs do not mention NJSP in their opposition as to this issue, they originally only conceded NJSP was immune from claims brought pursuant to 42 U.S.C. §§ 1983, 1981, and 1985. (ECF No. 21 at 20.) NJSP is, however, immune from all claims.

*re State of New York*, 256 U.S. 490, 497 (1921)). This protection is afforded by the Eleventh Amendment, which provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. States are immune from suits in federal court brought by their own citizens, or citizens of other states, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01; *see also Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007) ("The Eleventh Amendment of the U.S. Constitution protects a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought . . . .").

Courts have held that the NJSP is an arm of the state and therefore immune from federal lawsuits pursuant to the Eleventh Amendment. *See Lassoff v. New Jersey*, 414 F. Supp. 2d 483, 489 (D.N.J. 2006); *Simmerman v. Corino*, 804 F. Supp. 644, 650 (D.N.J. 1992), *aff'd*, 16 F.3d 405 (3d Cir. 1993). As such, Defendants Motion to Dismiss Count V as to NJSP is **GRANTED**.

With respect to Fuentes, the Court has already determined the most liberal reading of the Second Amended Complaint fails to articulate any facts that would support a claim against Fuentes. Accordingly, Defendants Motion to Dismiss Count V as to Fuentes is also **GRANTED**.

### D. Intentional and Negligent Infliction of Emotional Distress Against Quirk and Czech

#### 1. Intentional Infliction of Emotional Distress

Defendants argue Plaintiffs failed to state a claim for intentional infliction of emotional distress because they did not plead Defendants intended to cause the emotional distress and the conduct was not extreme and outrageous. (ECF No. 15-2 at 27.) Plaintiffs contend their Second Amended Complaint "is replete with outrageous factual allegations of Defendants' conduct which

give rise to their claim for negligent and intentional infliction of emotional distress claim." (ECF No. 21 at 28.)

Under New Jersey law, to establish a *prima facie* claim for intentional infliction of emotional distress, a plaintiff must show: "(1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing *Buckley v. Trenton Savs. Fund Soc'y*, 544 A.2d 857. 863 (N.J. 1988)). "An intentional infliction of emotional distress claim is rarely dismissed on a motion to dismiss." *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337, 349 (D.N.J. 2006). However, a plaintiff will not satisfy the above elements by merely demonstrating a defendant acted "unjust, unfair and unkind." *Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991).

In order to establish "extreme and outrageous" conduct, a plaintiff must sufficiently plead factual allegations to show the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Witherspoon*, 173 F. Supp. 2d at 242 (quoting *Buckley*, 544 A.2d at 863 (citation omitted)). As a threshold matter, the Court must determine whether a defendant's conduct meets this standard. *See Ali v. Jersey City Parking Authority*, No. 13-2678, 2014 WL 1494578, at *5 (D.N.J. Apr. 16, 2014) (citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)). In order to establish severe emotional distress, a plaintiff must show emotional distress "so severe that no reasonable [person] could be expected to endure it." *Glenside West Corp. v. Exxon Co.*, 761 F. Supp. 1100, 1113 (D.N.J. 1991) (quoting *Buckley*, 544 A.2d at 863). Additionally, "New Jersey law . . . requires plaintiffs to assert that they sought

treatment for their alleged distress." *Botts v. N.Y. Times Co.*, No. 03-1582, 2003 WL 23162315, at *9 (D.N.J. Aug. 29, 2003).

The Court finds, contrary to Defendants argument, that Plaintiffs have pled intent to cause the emotional distress and that Defendants' conduct was extreme and outrageous. With respect to intent, the Second Amended Complaint alleges Defendants lacked probable cause to arrest Wang; that Defendants "deliberately took steps to ensure [Wang's] bail could not be posted, including but not limited to failing to contact the DAG to approve her bail, in an attempt to coerce her cooperation and confession to crimes she did not commit;" "Defendant Officers ignored the exculpatory evidence and falsely claimed to have a video and photographs of [Wang] soliciting an undercover Trooper to engage in sex acts for $100.00," when no such video existed; etc. (*See* ECF No. 21.) Regarding extreme and outrageous conduct, the Second Amended Complaint alleges Wang was unlawfully detained, seized, arrested, and imprisoned without probable cause. (*See* ECF No. 6.) She was fingerprinted, made subject to a strip search, ordered to surrender her passport, charged with several crimes, placed in a cell with an inmate she feared, and that her food was taken from her while she was in jail. (*See id.*) She further alleges that the events surrounding the unlawful detention created financial and emotional strain on her, and that as a direct result she suffered severe emotional distress, embarrassment, humiliation and economic harm. (*See id.*) Moreover, she spent six days and five nights in county jail, for a crime she did not commit and was unable to attend her grandmother's funeral. Accordingly, Defendants' Motion to Dismiss Plaintiffs' intentional infliction of emotional distress claim is **DENIED**.

## 2. Negligent Infliction of Emotional Distress

Defendants argue Plaintiffs have failed to plead a claim for negligent infliction of emotional distress because they did not plead "the death or serious physical injury of any person, let alone a person with whom either plaintiff was intimately familiar." (ECF No. 15-2 at 26.) Plaintiffs content their "Second Amended Complaint is replete with outrageous factual allegations of Defendants' conduct which give rise to their claim for negligent and intentional infliction of emotional distress." (ECF No. 21 at 28.)

Under New Jersey law, there are two legal theories under which a plaintiff can establish a *prima facie* claim for negligent infliction of emotional distress. First, a plaintiff can show: 1) "death or serious physical injury of another caused by defendant's negligence; 2) a marital or intimate family relationship between plaintiff and the injured person; 3) observation of the death or injury at the scene of the accident; and 4) resulting severe emotional distress." *Fleming v. United Parcel Serv., Inc.*, 604 A.2d 657, 686 (N.J. Super. Ct. Law. Div. 1992). Second, a plaintiff can show "the defendant's negligent conduct placed the plaintiff in 'reasonable fear of immediate personal injury' which gave rise to emotional distress that resulted in a substantial bodily injury or sickness." *Jablonowska v. Suther*, 948 A.2d 610, 617 (N.J. 2008). Under the second standard, New Jersey law has adopted the "zone of danger" rule, where "immediate fear of personal injury could serve as the basis for recovery so long as 'substantial bodily injury or sickness' result." *Abouzaid v. Mansard Gardens Ass'n, LLC.*, 23 A.2d 338, 344 (N.J. 2011).

Here, Plaintiffs' Second Amended Complaint alleges Defendants' conduct placed Plaintiffs in a zone of danger. Specifically, she alleges "[i]nmates took her food while she remained silent and trembled with fear, unable to defend herself" and that "[o]nce, [Wang] was so hungry, she took an apple during food distribution. She was immediately cornered by an inmate who

15

pushed her, used foul language and told her that apple was not for her." (ECF No. 6 ¶¶ 53-54.) Accordingly, Defendants' Motion to Dismiss Count X is **DENIED.**

**IV. CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**. Specifically, all claim against the NJSP and Fuentes are **DISMISSED**. Claims against Quirk and Czech in their official capacity are also **DISMISSED**. Counts IV (Supervisor Liability),[3] V (Negligent Hiring/Training/Retention/Supervision), VI (Racial Discrimination), VII (Conspiracy with Racial Animus),[4] and VIII (NJLAD) are also **DISMISSED** in their entirety. Count II (malicious prosecution) is **GRANTED in part and DENIED in part**. It is **GRANTED** as to Quirk and Czech in their official capacities but **DENIED** as to them in their individual capacities. Defendants' Motion to Dismiss Count X is **DENIED**. Count IX (NJCRA) is **DISMISSED in part**, the NJCRA claims relating to their federal counterparts that have been dismissed are also **DISMISSED**, all others will proceed.[5] Counts I, III, X, XI and XII will proceed

---

[3] This Count is dismissed in its entirety because all claims against NJSP and Fuentes have been dismissed.

[4] Because Plaintiffs have voluntarily dismissed their § 1983 racial discrimination claim, the § 1983(3) claim is also **DISMISSED**. *See Barron v. New Jersey*, No. 17-735, 2018 WL 324725, at *4 (D.N.J. Jan. 8, 2018).

[5] The NJCRA was modeled after § 1983, and "courts in New Jersey have consistently looked at claims under the NJCRA 'through the lens of § 1983[,]'" thereby construing the NJCRA in terms similar to its federal counterpart. *Samoles v. Lacey Twp.*, No. 12–3066, 2014 WL 2602251, at *15 (D.N.J. June 11, 2014) (citation omitted); *see Hartfelder v. N.J. State Police*, No. 165461, 2017 WL 3184173, at *5 (D.N.J. July 26, 2017); *Armstrong v. Sherman*, No. 09–716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010). This Court has repeatedly interpreted the NJCRA analogously to § 1983. *See Chapman v. New Jersey*, No. 08–4130, 2009 WL 2634888, *3 (D.N.J. August 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983."); *Armstrong*, 2010 WL 2483911 at *5 ("[T]he [NJRCA] is a kind of analog to section 1983."). The NJCRA is therefore generally interpreted nearly identically to § 1983 and claims under the NJCRA are generally coterminous with and subject to the same defenses

in their entirety.


Date: August 19, 2019                                              */s/ Brian R. Martinotti*_____
                                                                   **HON. BRIAN R. MARTINOTTI**
                                                                   **UNITED STATES DISTRICT JUDGE**

---

and immunities as those brought under § 1983. *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011). Therefore, the Court analyzes Plaintiffs' NJCRA claims through the same lens of § 1983. *Id.* at 444.